NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KESNER FRANCOIS, | : | Hon. Jose L. Linares |
| Petitioner, | : | |
| | : | Civil No. 06-1578 (JLL) |
| v. | : | |
| B.I.C.E./D.H.S., et al., | : | OPINION |
| Respondents. | : | |

**APPEARANCES**:

    KESNER FRANCOIS, #A3W, 178135
    A36-470-712
    Hudson County Jail
    35 Hackensack Avenue
    Kearny, New Jersey  07032
    Petitioner Pro Se

    SUSAN HANDLER-MENAHEM, ASSISTANT U.S. ATTORNEY
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**LINARES**, District Judge

    Kesner Francois filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention.  Respondents filed an Answer seeking dismissal of the Petition. Having thoroughly examined these documents and considered the arguments of the parties, this Court dismisses the Petition without prejudice to the filing of another petition in the event that Petitioner's removal to Haiti is not reasonably foreseeable.

## I.  BACKGROUND

Kesner Francois, a native and citizen of Haiti, challenges his detention at a New Jersey jail by the Department of Homeland Security.  The United States Court of Appeals for the Third Circuit set forth the relevant facts in its May 19, 2006, Opinion denying Petitioner's challenge to his removal:

> Francois, a native and citizen of Haiti, was admitted to the United States as a lawful permanent resident on March 8, 1979. On May 8, 1992, Francois was convicted of possession of a controlled substance in state court.  On October 29, 1997, he was convicted of aggravated assault in state court and sentenced to six years in prison.
>
> Francois returned to Haiti three times in 2003.  On August 10, 2003, Francois arrived at JFK International Airport in New York City and sought admission to the United States as a returning resident.  Entry was denied, and he was taken into the custody of the Bureau of Immigration and Customs Affairs ("ICE") because his criminal convictions made him inadmissible.  He was eventually served with a Notice to Appear, charging him with being a removable alien under provisions of the Immigration and Nationality Act ("INA") based upon his criminal convictions in state court.
>
> In the removal proceedings that followed, Francois conceded removability, but applied for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture ("CAAT").  In support of the latter claim, Francois alleged that, as a criminal deportee being returned to Haiti, he would be indefinitely imprisoned by Haitian authorities and tortured if returned.  [On November 4, 2003, t]he immigration judge ("IJ") denied Francois' claim for asylum and withholding of removal, but granted relief under the CAT based upon the reported conditions in Haitian detention facilities.  The Department of Homeland Security ("DHS") appealed the IJ's decision to the Board of Immigration Appeals, and the BIA reversed [on April 8, 2004.]
>
> Francois thereafter filed a petition for habeas corpus in district court pursuant to 28 U.S.C. § 2241.  The district court denied

> habeas relief concluding that Francois "failed to show more than
> isolated instances of torture occur in Haitian prisons." Francois v.
> Ashcroft, 343 F. Supp. 2d 327, 337 (D.N.J. 2004). This appeal
> followed.

Francois v. Gonzales, 448 F.3d 645, 646-47 (3d Cir. 2006).

On May 19, 2006, pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, the United States Court of Appeals for the Third Circuit vacated the decision of the Honorable William J. Martini and addressed Petitioner's claims raised in his first § 2241 petition as if they were first presented in a petition for review of the BIA's decision, see Kamara v. Attorney General of U.S., 420 F.3d 202, 210 (3d Cir. 2005), and denied his petition for review of the decision of the BIA. See Francois, 448 F.3d at 648, 652. Although the Third Circuit found that "the conditions Francois will likely face in Haitian prisons following his removal to Haiti are inhumane and deplorable," id. at 651, the Third Circuit rejected Petitioner's CAT claim because "conditions of confinement, without more, do not constitute torture under the CAT," id. at 652.

Petitioner filed his second § 2241 Petition (presently before this Court) on April 4, 2006. Petitioner asserts that his detention is not authorized by statute, see 8 U.S.C. § 1231, as interpreted in Zadvydas v. Davis, 533 U.S. 678 (2001), and Clark v. Martinez, 543 U.S. 371 (2005), and violates the Due Process Clause of the Fifth Amendment of the United States Constitution, because his removal to Haiti is not reasonably foreseeable.

This Court ordered the government to file an answer and copies of all relevant documents. On May 12, 2006, Respondents filed an Answer, arguing that the Petition should be dismissed because Petitioner's detention is due to a judicial stay of removal which United States District Judge Martini granted pending resolution of Petitioner's challenge to his removal, which

was pending before the Third Circuit at that time.  See Francois, 343 F. Supp. 2d 327, 337 n.7 (D.N.J. 2006) ("The Court will leave in place the April 28, 2004 Order staying petitioner's transfer outside the District of New Jersey pending resolution of any appeal from this decision."), vacated sub nom. Francois v. Gonzales, 448 F.3d 645 (3d Cir. 2006).

## II.  DISCUSSION

A.  Legal Standard

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the INS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his constitutional rights, see Zadvydas, 533 U.S. at 699.  See also Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B.  Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on

4

whether the alien is to be removed from the United States.  8 U.S.C. § 1226(a).  Section 1226(a) provides:  "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . ."  8 U.S.C. § 1226(a).  Section 1226(c) mandates detention during removal proceedings for a limited class of criminal aliens, including inadmissible criminal aliens, such as Petitioner.  See 8 U.S.C. § 1226(c).  Section 1226(c) provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person

> cooperating with an investigation into major criminal activity, or
> an immediate family member or close associate of a witness,
> potential witness, or person cooperating with such an investigation,
> and the alien satisfies the Attorney General that the alien will not
> pose a danger to the safety of other persons or of property and is
> likely to appear for any scheduled proceeding. A decision relating
> to such release shall take place in accordance with a procedure that
> considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of § 1226(c), and ruled that mandatory detention of criminal aliens during removal proceedings is a constitutionally permissible part of the removal process. "[T]he statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527-28.

Once an alien is ordered removed, the Attorney General is required to remove him from the United States within a 90-day "removal period." See 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').") 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain an alien during the 90-day removal period: "During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2)

or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231(a)(2); Zadvydas, 533 U.S. at 683.

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien.  Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  Zadvydas, 533 U.S. at 689.  However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention.  Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  Id.

7

In 2005, the Supreme Court ruled in Clark v. Martinez that the post-removal-period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable. See Clark v. Martinez, 543 U.S. at 384. The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." Id. at 386. Under those circumstances, the Court held that the petitions for habeas corpus should have been granted. Id.

Petitioner argues here that his detention is governed by 8 U.S.C. § 1231(a)(6), as interpreted by Zadvydas and Clark v. Martinez. Specifically, Petitioner asserts:

> The D.H.S. at this time are unable to effectuate my removal due to the present situation in Haiti. It is a fact that many Haitian deportees are languishing in detention facilities all over the United States. And no one knows when and if Haiti will accept deportees in the near future.
>
> In this instance, it will be unconstitutional for the DHS to continue my detention under such circumstances when Haiti refuses to accept any deportees from the United States. The State Department is fully aware of the situation and the number of Haitian nationals who are in detention all over the country.

(Pet. at p. 2.)

However, Petitioner's removal period did not begin until May 19, 2006, when the Third Circuit denied his petition for review of the decision of the BIA. The 90-day removal period does not begin until the latest of several events occurs. See 8 U.S.C. § 1231(a)(1)(B). Section 1231(a)(1)(B) provides in full:

8

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section (ii) applies here, as Petitioner's removal order was judicially reviewed by the Third Circuit and Judge Martini ordered a stay of Petitioner's removal.  Thus, under § 1231(a)(1)(B)(ii), Petitioner's removal period did not begin until May 19, 2006, when the Third Circuit denied his petition for review.  See <u>Vasquez v. Immigration and Customs Enforcement</u>, 160 Fed. Appx. 199 (3d Cir. 2005).  Because the presumptively reasonable six-month period to effectuate Petitioner's removal will not expire until November 19, 2006, at the earliest, this Court will dismiss the Petition as premature.  <u>Id.</u>  However, the dismissal is without prejudice to the filing of another petition in the event that, after the expiration of the presumptively reasonable six-month period, there is no significant likelihood of removal in the reasonably foreseeable future.

### III.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition without prejudice.


DATE: November 20, 2006                                          /s/ Jose L. Linares
                                                                 United States District Judge